ALBERT LOUIS THOMAS, JR.,

*vs.*

JOHN RODNEY KING and ELEANOR W. KING, his wife, and VIKING ENGINEERING Co., a Delaware corporation.

*Sussex, April 2, 1953.*

*Max Terry* and *Henry J. Ridgely*, Dover, Eldridge Hood Young and *Joseph W. Starlings*, Baltimore, Md., for plaintiff.

*David F. Anderson*, of Berl, Potter & Anderson, Wilmington, and *Caleb M. Wright*, Georgetown, for defendants.

SEITZ, Chancellor: The sole issue is whether an oral partnership agreement was established by the evidence.

The plaintiff, Thomas, brought this action for an accounting on the ground that he and the defendant, John Rodney King, were partners in connection with work done on certain specific jobs and that the defendant, King, has refused to account. The defendant, King, contends that plaintiff was not a partner but an employee. King's wife and Viking Engineering Company, a Delaware corporation, were joined as parties defendant solely to implement any judgment for plaintiff. Unless otherwise indicated, future reference to "defendant" will embrace only John Rodney King.

It is conceded that plaintiff has the burden of showing that he and defendant entered into a partnership arrangement. See *Pappas v. Venetsanos*, 19 *Del.Ch.* 347, 167 *A.* 842; affirmed, *per curiam*, 20 *Del.Ch.* 453, 171 *A.* 925.

To resolve the issue of partnership it is necessary to analyze the evidence in some detail. I now proceed to that chore.

Plaintiff, while working with the Army Engineers doing dredging work, had occasion to meet the defendant and so they were acquaintances at the time the plaintiff was released by the Army Engineers in late 1947. Plaintiff was a much younger man who then had no business of his own. Defendant was then and had been in partnership with Charles T. Johnson doing marine salvage work. He was also in business for himself, as he had been for many years, as a distributor of DuPont explosives. He also did specialized blasting connected with road building, marine work, etc. However, it appears that these connections did not require his full time during that period. It also appears that he had very little money at the time.

It is undisputed that they had a discussion in about November, 1947 but plaintiff alleges and defendant denies that they agreed to form a partnership at the time of that discussion. According to plaintiff it was agreed that they would get some type of work and get enough money to build a dredge and then go into the dredging business. It was further agreed that the profit from this and other undertakings would be equally divided between them. Plaintiff says that each was to have a drawing account of $500 per month to be charged against profits. He further says that they agreed that a corporation was to be formed to take over and conduct the business, the stock to be owned equally by them. He further testified that his share of the money—presumably that in excess of the drawing accounts—would go into the corporation, Viking Engineering Company.

The following are the "jobs" which plaintiff claims were subject to their partnership agreement:

1. The Sparrows Point Pennsylvania Railroad job under a subcontract with Langenfelder & Son Corp. (hereinafter called "Langenfelder").

2. The job of Johnson & King to remove a sunken barge at Tampa, Florida.

3. The job of Johnson & King to remove a sunken barge at Ocean City, Maryland.

4. The seeding job at Friendship Airport for Langenfelder.

5. The Patapsco River dredge job for Langenfelder.

In addition to his share of the profits from the jobs enumerated, plaintiff claims a one-half interest in the dredge "Patpaquassett" and a motor work boat.

Returning to the chronological narrative, in December, 1947 a bid was made to secure a job for the removal of the bridge at Ocean City, Maryland. Plaintiff was employed on other work at the time. He says that if they were awarded the job he and defendant were to share equally in 50% of the profit with the other 50% to go to a financial "backer" in New York. It does not appear that the backer knew of plaintiff. Certainly the backer only dealt with defendant. The evidence here is most unsatisfactory but since the job was not awarded to defendant I pass over it without further comment except to say that the evidence connected with it clearly does not justify any finding of partnership.

The first of the jobs in dispute is the so-called Pennsylvania Railroad job at Sparrows Point. The facts are that this job was awarded by the Pennsylvania Railroad to Langenfelder, and Langenfelder in turn entered into a subcontract with defendant alone to do the blasting work involved. It appears that the sales agent for the DuPont Company, whose powder was specified, recommended King to the Railroad for the job in January, 1948. The same man also recommended defendant to Langenfelder. The explosives for the job were sold by DuPont for defendant's use. He was admittedly the only man in the area capable of handling the job. As noted, defendant had long experience in blasting work and had previously done work for Langenfelder. Defendant did not get in touch with plaintiff about the job until about March 12–14. Plaintiff was then working on a job of his own. There is no doubt in my mind that defendant obtained the railroad job without any aid from plaintiff. Whether, as between plaintiff and defendant, a partnership existed as to this job must be resolved by considering the evidence generally.

Plaintiff admittedly commenced work on the railroad job in March, 1948, but defendant says he worked only as his employee superintending the job. Plaintiff himself testified that he knew defendant could not pay him until he received the first payment on the job. He was not paid during the first three months but in early July he received a check drawn on Mrs. King's account for $1500 representing—says plaintiff—his agreed $500 per month drawing. Defendant says it represented pay at $500 per month. The first payment was made shortly after defendant received the first large payment on the job. Plaintiff says that $500 per month drawing was about what he had been paid by the Army Engineers and was a minimum living requirement and was agreed to by defendant.

A large number of daily work form sheets for the railroad job were run off on a duplicating machine by plaintiff who placed thereon the name "Viking Engineering Company". Most of these sheets were signed by plaintiff but some were signed by defendant. It appears that the certificate of incorporation of Viking Engineering Company was filed with the Secretary of State on March 15, 1948, by defendant's attorney. However, the corporate defendant never qualified to do business, never issued stock, etc. Certainly the corporation was not significant in the mind of Langenfelder because their agreement was with defendant and payment was made to him.

Parenthetically, plaintiff was working on two jobs of his own from January until May 1948. According to plaintiff's version of the partnership these jobs, of course, formed no part of the partnership. Also the defendant had another job going on which plaintiff worked for a few days. For some reason he does not consider this subject to their agreement even though it was apparently obtained after the alleged agreement of partnership was made.

Some time in the latter part of April, 1948 plaintiff left the railroad job and went, at defendant's request, to supervise the removal of a wreck in Tampa. This job was being performed by Johnson & King but plaintiff says that King's share, being 40%, was to be divided with plaintiff under their arrangement. The job was completed in the same month and plaintiff returned to

the railroad job which was completed in September, 1948. Thereafter, plaintiff, went, at defendant's request, from the railroad job to another job being performed by Johnson & King in Ocean City. This job was completed in October, 1948 and plaintiff claims it was subject to the same agreement. In December, 1948 plaintiff proceeded, at defendant's request, to work on the Friendship Airport seeding job where he worked until January, 1949, when the dredge Patpaquasett was purchased and he commenced work on its renovation. The bill of sale was to plaintiff and defendant although plaintiff conducted the negotiations and instructed the sellers how the bill of sale was to read. The check in payment was drawn by defendant's wife on the bank account in her name, and in which all money received from these various jobs was deposited.

Plaintiff relies strongly on certain alleged admissions and business relations of plaintiff and defendant as partners to a number of persons doing business in Baltimore, Maryland. About all of these arose out of purchases made and work ordered in connection with the renovation of the dredge.

In early 1949 the motor work boat in dispute was also purchased pursuant to negotiations conducted solely by plaintiff and title was taken in the name of the corporation.

Some time in the first half of 1949 dredging work commenced on the Patapsco River job with plaintiff in charge. In July, 1949 plaintiff left the job. He says he took a vacation, defendant says he quit. I am not persuaded by plaintiff's version. However, he came back in about two weeks and resumed work. Plaintiff by letters dated October 12 and 18 made demand upon defendant for an accounting based upon the alleged partnership. He continued working until defendant ordered him off the job in November. Thereafter, he brought suit in 1949 in Maryland charging a partnership existed and claiming an appropriate share of the profits. The case was not tried and later this action was filed.

Throughout the entire period from March, 1948 to November, 1949 plaintiff received only the $500 per month. Commencing January 1, 1949 withholding taxes and social security were deducted from his check.

What "facts" does plaintiff rely upon to sustain his claim that a partnership was created which was later to become a corporation? They appear to be these:

(1) Plaintiff's testimony that he and defendant so agreed.

(2) Testimony of plaintiff's wife corroborating plaintiff's testimony in part concerning the agreement to become partners.

(3) The filing by defendant's attorney of the certificate of incorporation for Viking Engineering Company at about the time the Pennsylvania Railroad job was commenced.

(4) Fact that some pay roll sheet forms prepared by plaintiff and showing the name Viking Engineering Company were signed by defendant.

(5) Purchase of dredge in names of plaintiff and defendant and payment therefor by Mrs. King from the only bank account used by the defendant.

(6) Testimony of a number of persons doing business in Baltimore as to business relations and admissions tending to indicate the existence of a partnership or corporate common interest.

(7) The fact that defendant had a similar loose partnership arrangement with Charles T. Johnson.

(8) The fact that defendant had business other than Johnson & King.

(9) Defendant's conduct in connection with the trial of this action.

The first two "facts" are, of course, based upon the testimony of plaintiff and his wife that there was to be a partnership and later a corporation. In view of the defendant's denial and in view of the evident self-interest of plaintiff and his wife it is obvious that the issue must be resolved by considering the other facts to see if they lend support to such testimony. Moreover, certain testimony of plaintiff's wife is equivocal and shifting. First she said that defendant's dynamite business was to remain his own. On cross-examination she said this only applied to his Delaware dynamiting business.

The third fact showing that the certificate of incorporation was filed by defendant's attorney at about the time the railroad job was commenced tends to corroborate to some extent plaintiff's contention that he and defendant agreed to form a corporation as a sequel to the partnership arrangement. Defendant, of course, does not deny that such a certificate was filed but he denies that there was any commitment to become a 50–50 owner thereof with plaintiff. This evidence is not conclusive of the issue although there is some reason to believe that plaintiff was lead to hope he would eventually acquire some interest in the corporation.

The so-called fourth fact showing that both plaintiff and defendant signed pay roll sheets containing the name Viking Engineering Company requires elaboration. First of all, the forms with the Viking name thereon were prepared in large numbers solely by plaintiff and most of them were signed by plaintiff. True defendant signed a few of them but it appears that they were used by defendant only when plaintiff was away on the Tampa job. The bulk of them were signed by plaintiff. In view of the fact that they were being submitted to the subcontractor who had contracted with defendant alone and in view of their rather narrow purpose I cannot attach great significance to them.

The fifth fact is the purchase of the dredge in the name of plaintiff and defendant and the payment therefor by Mrs. King. There seems to be no doubt that plaintiff alone negotiated the purchase of the dredge and delivered or mailed the checks and that he alone directed that the bill of sale be put in the names of plaintiff and defendant. He kept the documents in his possession and I am not persuaded that defendant knew that title had been taken in the names of both of them. I think the same lack of knowledge applies to the motor work boat. While defendant may have a certain business shrewdness, I was not impressed with the quality of his cerebration processes. Many statements by plaintiff to the effect that defendant received notice of action or copies of documents I find unconvincing.

The next fact is testimony that certain persons doing business in Baltimore were lead to believe that plaintiff and defendant had a partnership or a corporate common interest because of business

done in connection with the purchase of parts and materials for the renovation of the dredge. I have read this testimony carefully and I have serious doubt that it is entitled to the substantial weight which plaintiff claims for it. It is apparent that plaintiff was constantly seeking to create the impression of a joint interest with defendant. Plaintiff made nearly all of these contacts and in view of the overall picture I cannot accord this testimony the weight claimed for it by plaintiff. I cannot believe plaintiff's testimony that copies of all letters were sent to defendant. Moreover, there is no consistency in this aspect of the case because some transactions were in the name of plaintiff and defendant, some in the corporate name and some in the name of either plaintiff or defendant. Perhaps this testimony would be entitled to greater weight if we were dealing with an outsider's claim that plaintiff and defendant were partners. Compare *Robinson v. Green's Adm'r*, *5 Harr. (Del.)* 115.

Facts seven and eight showing the existence of a loose oral partnership arrangement between defendant and Johnson and the further fact that defendant had business other than that with Johnson are, of course, relevant but in and of themselves only can be considered as minor surrounding circumstances. I agree that it is perfectly possible to conclude that defendant, considering his other activities and loose business practices, could well have entered into the agreement for which plaintiff contends. The ultimate question is, does the cumulative effect of the more substantial facts justify such a conclusion?

Finally, plaintiff points to some conduct on defendant's part in connection with the trial of the action. I will not elaborate upon this except to say that defendant's conduct—with due allowance for his obvious emotional instability—was most reprehensible and yet it is difficult to conclude therefrom that it provides any substantial evidence tending to show that a partnership existed.

I have considered the "facts" relied upon by plaintiff in a rather isolated fashion. Conceding that such facts when viewed cumulatively and apart from other evidence could justify the conclusion that plaintiff and defendant had a partnership arrangement, it now becomes important to consider the defendant's facts

tending to show that there was no such agreement. Defendant had been in partnership with Johnson & King for several years and had been in the blasting business for many years and had done work for Langenfelder. In connection with the jobs here in issue, the defendant made the contracts, supplied the equipment, hired and fired the employees. He received all the money on the contracts, he paid all the bills including the pay rolls, and on occasion posted his own performance bond with surety.

It also appears that plaintiff exercised no real voice in the management of the business. He went from job to job as defendant "requested" him. When defendant "discharged" him he left the job. He filed certain tax returns and applications for workmen's compensation and signed a service agreement all tending to show that he was an employee. I must, however, state that the tax returns are not too strong because the one designating defendant as his employer was filed long after plaintiff commenced claiming that he was a partner. Plaintiff also received only $500 per month for the entire period of his work with defendant and after several months he permitted income and social security taxes to be deducted from his compensation. His explanation based on the fact that defendant allegedly told him the corporation was almost ready to operate is far from convincing, particularly in view of the period of time he permitted to elapse without bringing the matter to a head and in view of the fact that he had reason to know the probable profits on the jobs.

Defendant also makes much of the point that plaintiff had not agreed to be responsible for any losses and assumed no obligation of any kind. Strictly read the record is silent on the question of plaintiff's liability or non-liability for losses. I do not regard this silence as here being too significant because I assume that if the other circumstances warranted it, the court could and would draw the proper legal inference as to responsibility for losses. Compare generally *Beecham v. Dodd*, 3 *Harr. (Del.)* 485.

Thus there are facts tending to corroborate plaintiff's claim, yet there are equally strong facts tending to negative plaintiff's claim. After due consideration of these facts and the record generally, I am forced to conclude that plaintiff has not sustained

the burden of demonstrating by the preponderance of the evidence that he and defendant entered into a partnership agreement or joint venture in connection with the jobs enumerated. I therefore conclude that the complaint must be dismissed.

Order on notice.