ALBERT LOUIS THOMAS, JR.,
Appellant,

*vs.*

JOHN RODNEY KING and ELEANOR W. KING, his wife, and VIKING ENGINEERING COMPANY, a corporation of the State of Delaware,
Appellees.

*Supreme Court, On Appeal, October 30, 1953.*

TUNNELL, Justice, RICHARDS, President Judge, and HERRMANN, Judge, sitting.

*Max Terry* and *Henry J. Ridgely,* of Dover, and *Joseph W. Starlings* and *Eldridge Hood Young,* of Baltimore, Md., for appellant.

*David F. Anderson,* of Wilmington, and (on the brief) *Caleb M. Wright,* of Georgetown, for appellees.

TUNNELL, Justice, delivering the opinion of the court.

Prior to the events with which this action is concerned, the plaintiff, Thomas, was employed as an engineer in the United States Corps of Engineers, and one of the defendants, John Rodney King (hereinafter called simply "the defendant" or "King"), was a member of a firm of contractors doing marine salvage work and was also engaged individually both in sales distribution of explosives and in construction blasting.

Late in 1947, when Thomas was about to be released from government employment, or early in 1948, after his release, Thomas and King had one or more conferences, as a result of which the two parties entered into some sort of an arrangement for working together in the future. Just what kind of an arrangement it was is the central question in this case. Thomas says that it was an agreement of equal partnership and that, as an extension or *alter ego* of this partnership, there was to be a corporation, to be called "Viking Engineering Company", in which each of these parties would own one-half of the capital stock. King, on the other hand, says that their understanding was simply that he was to give Thomas a job. The two versions of what transpired are in utter conflict, and each of the parties points to facts and deeds which he interprets in such a way as will accord only with his particular theory of the arrangement.

Without putting their working agreement, or any feature of it, into writing, the parties, in March or April, 1948, began to work together and proceeded to complete five contracts or subcontracts, from which Thomas alleges that there was a net profit in excess of $100,000. Then, in November of 1949, King ordered Thomas to leave a job then in progress; he left; and their business relationship, whatever it had been, was severed.

In the meantime, King's attorney had formed a Delaware corporation called "Viking Engineering Company". No stock had ever been issued in the corporation, though, and it never was organized or qualified to do business.

So long as plaintiff and King had worked together, plaintiff had received the sum of $500 per month. King, of course, claims that the money thus paid was salary. Plaintiff claims that it was only a drawing account.

Thomas sued King in the Court of Chancery, alleging the partnership, and in order to render effective the accounting for which he prayed, he joined King's wife and the corporation, Viking Engineering Company, as additional parties defendant.

After the trial of the case, the Chancellor handed down an opinion, reported *ante* p. —, 95 *A.2d* 822, in which he found that the evidence for the respective parties was a virtual stand-off, and that, therefore, the plaintiff had failed to sustain his burden of proof. The judgment entered thereon dismissed the complaint with prejudice.

Plaintiff appealed, and his case in this court has been grounded upon three propositions.

First, he says that the great preponderance of the evidence at the trial supported the partnership theory so that the Chancellor erred in refusing to find for the plaintiff. In the presentation of this argument, plaintiff's counsel have emphasized all those circumstances which they conceive to be most favorable to the plaintiff, exposing in detail what they conceive to be weaknesses in defendant's case. Since the business was most loosely conducted from start to finish, there is,

as the Chancellor indicated, a great deal that can be said for or against either party.

Such a presentation as plaintiff has made, of course, develops the human interest features of the case. But as an appellate court we are bound to keep in mind that it is not within our province to heft and record the relative weights of conflicting factual presentations. Indeed, in this instance, since plaintiff's case is *prima facie* adequate, our duty is to do the diametric opposite of what plaintiff has done. We must see what affirmative merit there is in defendant's case.

Defendant himself, as was indicated in the recital of facts, testified that there was no arrangement whatever between the parties except that he agreed to hire Thomas. Therefore, if the Chancellor believed King, that alone would put an end to the matter. Actually, however, the record contains much further, if unneeded, support. There was evidence proving or tending to prove the following:[1]

1. King alone was the contracting party in the five jobs referred to in the testimony. In respect to one of them, he personally posted a performance bond with surety.

2. King alone on four jobs, and King's brother on one, hired and fired employees and directed them as well as Thomas what to do.

3. King handled the money, paying and collecting all bills, causing all monies to be deposited in and checked out of an account which was carried in his wife's name.

4. Thomas worked from March or April in 1948 until November of 1949, through completion of one contract after another, and through the end of a calendar year, receiving a steady $500.00 per month, without any accounting or anything in writing assuring him of one.

5. Thomas filed 1948 and 1949 income tax returns showing that he received monies from "J. R. King". In the 1949 return King was designated as the "employer". No partnership return was ever filed.

6. In connection with a service agreement with Chesapeake Welding and Supply Co., Thomas signed as King's "agent".

1. For a comparable list of opposite tenor see the Chancellor's opinion, *ante pp.* —, —, 95 *A.2d* 822, 824-825.

7. Beginning on January 1, 1949, income tax was withheld and social security payments were deducted from the $500.00 which Thomas received each month.

8. King paid unemployment compensation tax to the State of Maryland on Thomas as King's employee, and Thomas knew that he did so. Thomas on one occasion obtained workmen's compensation insurance protecting King as the "employer" on a job which he now contends was a part of the partnership enterprise.

There is, therefore, an abundance, not a bare sufficiency, of support for the lower court's refusal to find as a fact that there was a partnership, and it is well settled that this court in such a situation will not disturb the factual findings of the Court of Chancery. *Chalfant v. Reinhardt,* 12 *Del.Ch.* 389, 113 *A.* 674; *Henderson v. Plymouth Oil Co.,* 16 *Del.Ch.* 347, 375, 141 *A.* 197; *Blish v. Thompson Automatic Arms Corporation,* 30 *Del.Ch.* 538, 584, 64 *A.2d* 581, 604; *Pierce v. Wahl,* 32 *Del.Ch.* —, 86 *A.2d* 757, 759.

Plaintiff next points out what he denominates an error of law. He concedes that ordinarily the burden of proving a partnership is on the party asserting it. But he says that that rule is not the one here applicable because there were in this case certain facts which shifted the burden of proof to the defendant.

The burden was shifted, he says, because it was testified at the trial, and not denied, that a certain dredge was bought for $2,000, and the bill of sale delivered to the purchaser contained these words: "Sold to: J. Rodney King and A. L. Thomas". Then a "work boat" was bought, and the title to the work boat was registered with the customs authorities in the name of "Viking Engineering Company". Plaintiff urges that where property is thus bought in joint names, and the property is to be used for a certain enterprise, there is a legal presumption that the enterprise itself is of partnership character. For authority plaintiff cites us to *Beecham v. Dodd,* 3 *Har.* 485.

*Beecham v. Dodd* is inapposite; it does not deal with the acquisition of any property in joint names. But there is, none the less, a basic reasonableness in plaintiff's argument. We agree that the

purchase of property in joint names, in the absence of any other explanation, would suggest that the enterprise for which the property was to be used was itself to be joint. This inference derives its validity from the probability that any given defendant thinks in the same way as the great majority of other people. People are ordinarily so disposed that one man will not buy a business property jointly with another, without a rental agreement or other such inducement, unless the business is to be a joint one. This, therefore, is no "legal presumption", or principle of law at all, but a mere inference of fact, and hence is subject to the same rule which defeated plaintiff's first contention.

Lest our rejection of an apparently plausible factual argument on the authority of a bare principle of law should leave in a reader's mind some question as to whether the Chancellor made a wise decision, we here turn aside, out of deference to the lower court, to state the factual answer. King put up all the money for the dredge, the rebuilding of the dredge, and the purchase of the boat. Further, he testified, and the Chancellor believed and found as a fact, that the dredge and work boat transactions were entrusted entirely to Thomas, and that King never knew that the titles to the two craft had not been put in his sole name until after this suit had been brought. In the light of this finding, the whole matter of the dredge and boat titles is thus reduced to the level of a self-serving declaration.

As his third and concluding argument, plaintiff makes some sort of a point that there is "a presumption of good faith" which he says the Chancellor overlooked, citing 20 *Am.Jur.,* p. 146. We have, however, been helpless to discover how this principle can be applied to the case at hand. While it is, of course, true that persons are always presumed to act in good faith, it is evident that one of these parties did not. We know of no presumption that a plaintiff has acted more honorably than a defendant. This argument is obviously without merit.

It would have been the duty of the appellate court, on this record, to sustain the Chancellor, no matter for which of these parties he had decided. Accordingly, the clerk will in due course issue the appropriate mandate.