IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

NEW WOOD RESOURCES LLC,     )
    )
    Plaintiff/     )
    Counterclaim Defendant,     )
    )
    v.     ) C.A. No. N20C-10-231 SKR CCLD
    )
RICHARD BALDWIN     )
    )
    Defendant/     )
    Counterclaim Plaintiff.     )

Submitted: June 14, 2023
Decided: July 31, 2023

## MEMORANDUM OPINION

Richard P. Rollo, Esquire, Travis S. Hunter, Esquire, Jordan L. Cramer, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware, *Attorneys for Plaintiff/Counterclaim Defendant New Wood Resources LLC*.

Sean J. Bellew, Esquire, Bellew LLC, Wilmington, Delaware; Chris L. Gilbert, Esquire, Gilbert PC, Dallas, Texas, *Attorneys for Defendant/Counterclaim Plaintiff Richard Baldwin*.

**Rennie, J.**

# I. INTRODUCTION

Plaintiff and defendant have been embroiled in lawsuits against each other over the past several years. Defendant's exit from a plaintiff-owned company was the catalyst for multiple lawsuits spanning state and federal courts. This iteration of the conflict stems from plaintiff's agreement to indemnify defendant for costs incurred in defending certain lawsuits. This commitment was conditioned upon defendant's agreement to repay plaintiff, if it was later determined that defendant was not entitled to indemnification under the standard set forth in their agreement. Defendant requested indemnification, and plaintiff complied after being ordered by a court. Plaintiff then determined that defendant did not meet the contractual standard for indemnification and sought to claw back the funds advanced to defendant. That is what this action is about—the claw back.

Plaintiff asserted a breach of contract claim as a result of defendant's refusal to return the advanced indemnification funds. In response, defendant asserted a counterclaim that alleges, among other things, that the agreement contained an implied term requiring any determination on indemnification to be made in good faith. This Court previously granted judgment on the pleadings in plaintiff's favor on both the breach claim and the counterclaim. As to the breach claim, the Court determined that defendant breached the agreement and, as to the counterclaim, the Court determined that that the agreement contained no implied term. The ruling on

the counterclaim was appealed to the Delaware Supreme Court. The Supreme Court held that the agreement contained an implied term that any indemnification determination must be made in good faith. Thus, the case was remanded to this Court.

Following remand, the parties conducted discovery. Plaintiff now moves for summary judgment on the counterclaim. The issue before the Court is whether defendant can demonstrate that plaintiff breached the implied covenant of good faith and fair dealing when plaintiff determined that defendant was not entitled to indemnification. Stated differently, can defendant establish that plaintiff acted in bad faith? The answer is no, because the record does not support a plausible finding of bad faith. Accordingly, for the reasons set forth more fully below, plaintiff is entitled to summary judgment on defendant's counterclaim. Plaintiff is also entitled to judgment in its favor on its breach claim because defendant has no valid basis to excuse his breach.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties

Plaintiff/Counterclaim Defendant, New Wood Resources LLC ("New Wood"), is a Delaware limited liability company with its principal place of business

in Boise, Idaho.[1]  New Wood has multiple members.[2]  Defendant/Counterclaim Plaintiff, Dr. Richard Baldwin, served as a member of New Wood's Board of Managers from September 13, 2013 to August 24, 2016.[3]  Dr. Baldwin is a citizen of Texas.[4]

Several non-parties are relevant to this action.  Oak Creek Investments, LLC ("OCI") is a member of New Wood.  Dr. Baldwin served as OCI's manager.[5]  New Wood operates a plywood and veneer manufacturing facility in Mississippi known as Winston Plywood & Veneer LLC ("WPV").[6]  New Wood controls WPV through its wholly owned subsidiary WPV Holdco LLC ("Holdco").[7]  ACR Winston Preferred Holdings LLC ("ACR") was the majority holder of New Wood Units at the relevant time, holding approximately 85.52% of New Wood's then-outstanding Units.[8]  Andrew Bursky was President of ACR.[9]  Kurt Liebich is the former CEO of WPV.[10]

---

[1] Amended Complaint ("Am. Compl.") ¶ 2 (D.I. 6).
[2] *Id.*
[3] *Id.* ¶ 3; Answer & Counterclaim ("Counterclaim") ¶ 3 (D.I. 7).
[4] Am. Compl. ¶ 3.
[5] *See id.* ¶ 12; Plaintiff/Counterclaim Defendant's Opening Brief ("Opening Br.") at 5 (D.I. 61).
[6] *Baldwin v. New Wood Res. LLC*, 283 A.3d 1099, 1102 (Del. 2022).
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*

**B. Dr. Baldwin's Employment by New Wood**

New Wood leased the WPV manufacturing facility in Mississippi.[11] The facility was dormant and in need of repairs.[12] New Wood started repairs with the intent to operate a plywood mill there.[13] New Wood selected Dr. Baldwin to oversee the facility's repairs because he was an industry expert.[14] Before repairs were completed, a tornado destroyed the facility.[15] As a result of the damage to the facility, WPV received funding from the Federal Emergency Management Agency, and Dr. Baldwin led the facility's restoration effort on behalf of New Wood.[16] On August 24, 2016, Dr. Baldwin's employment as President and General Manager of WPV ended.[17]

**C. The LLC Agreement**

The verbiage of New Wood's Second Amended and Restated Limited Liability Company Agreement (the "LLC Agreement") is central to this dispute. The LLC Agreement provides specific indemnification and advancement rights to

---

[11] *Baldwin*, 283 A.3d at 1104.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.* at 1104-05.
[17] It is unclear from the record whether Dr. Baldwin resigned or whether he was terminated. *Compare Baldwin*, 283 A.3d at 1105 (stating that Dr. Baldwin was "terminated"), *with* Answering Br., Ex. A at 1 (stating in the New Wood Written Consent document that Dr. Baldwin resigned).

its Managers.[18]  Hence, as a Manager, Section 8.2 of the LLC Agreement establishes Dr. Baldwin's indemnification rights:

> Subject to the limitations and conditions as provided in this Article 8, each Person who was or is made a party or is threatened to be made a party to or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, arbitrative or investigative (hereinafter, a *"Proceeding"*), or any appeal in such a Proceeding or any inquiry or investigation that could lead to such a Proceeding, by reason of the fact that it, or a Person of whom it is the legal representative, is or was a Member, Manager, Member of a Committee of the Board or an Officer, or while a Member, Manager or an Officer is or was serving at the request of the Company as a member, manager, director, officer, partner, venturer, proprietor, trustee, employee, agent or similar functionary of another foreign or domestic limited liability company, corporation, partnership, joint venture, sole proprietorship, trust, employee benefit plan or other Person (each, an *"Indemnitee"*) shall be indemnified by the Company to the fullest extent permitted by the [Delaware Limited Liability Company] Act, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Company to provide broader indemnification rights than said Act permitted the Company to provide prior to such amendment) against judgments, penalties (including excise and similar taxes and punitive damages), fines, settlements and reasonable expenses (including attorneys' fees) actually incurred by such Person in connection with such Proceeding, and indemnification under this Article 8 shall continue as to a Person who has ceased to serve in the capacity which initially entitled such Person to indemnity hereunder. *Notwithstanding anything to the contrary in this Section 8.2, no Person shall be entitled to indemnification hereunder unless it is found (in the manner described below in this Section 8.2) that, with respect to the matter for which such Person seeks indemnification, such Person acted in good faith and in a manner that he or she reasonably believed to be in or not opposed to the best interests of the Company and, with respect to any*

---

[18] "Managers" is defined in the LLC Agreement.  *See* Defendant/Counterclaim Plaintiff's Answering Brief ("Answering Br."), Ex. B § 7.2(a) (D.I. 70); *see also id.*, Ex. B at Exhibit A to the LLC Agreement at 4 (defining "Manager").

criminal action or proceeding, had no reasonable cause to believe his or her conduct was unlawful. . . . *The finding of the standard of conduct required above shall be made* (a) by a majority vote of all the Managers who are not parties to such Proceeding even though less than a quorum or (b) if there are no such Managers, or if such Managers so direct, by independent legal counsel in a written opinion or (c) *by holders of a Majority of the then-outstanding Units (determined without regard to any Members that are parties to such Proceeding).* Notwithstanding anything to the contrary herein, ***"internal disputes"*** shall be excluded from the types of claims indemnified hereunder. For purposes of the preceding sentence, an ***"internal dispute"*** is defined exclusively as any proceeding commenced by any Atlas Member or one or more officers, directors, managers, partners, members or employees of any Atlas Member against any other Atlas Member or one or more other officers, directors, managers, partners, members or employees of any Atlas Member against any other Atlas Member or one or more other officers, directors, managers, partners, members or employees of such Atlas Member.[19]

Section 8.3 of the LLC Agreement covers "Advance Payment" and states:

The right to indemnification conferred in this <u>Article 8</u> shall include the right to be paid or reimbursed by the Company the reasonable expenses incurred by a Person of the type entitled to be indemnified under <u>Section 8.2</u> who was, is or is threatened to be made a named defendant or respondent in a Proceeding in advance of the final disposition of the Proceeding and without any determination as to the Person's ultimate entitlement to indemnification; provided, however, that the[] *payment of such expenses incurred by any such Person in advance of the final disposition of a Proceeding shall be made only upon delivery to the Company of a written affirmation by such Person of its good faith belief that it has met the standard of conduct necessary for indemnification under this <u>Article 8</u> and a written undertaking, by or on behalf of such Person, to repay all amounts so advanced if it shall ultimately be determined that such indemnified Person is not entitled to be indemnified under this <u>Article 8</u> or otherwise.*[20]

---

[19] *Id.*, Ex. B § 8.2 (underlining and bold in original) (italics added).
[20] *Id.*, Ex. B § 8.3 (underlining in original) (italics added).

6

## D. Lawsuits and Advancement

### 1. *Underlying Actions*

Four lawsuits that are relevant to this action will be discussed—two in Mississippi, and two in the Delaware Court of Chancery.

On February 9, 2018, Dr. Baldwin, as the manager of OCI, filed a complaint in the United States District Court for the Northern District of Mississippi against New Wood, WPV, Holdco, Mr. Bursky, Mr. Liebich, and Atlas FRM LLC d/b/a Atlas Holdings, LLC ("Atlas"). Dr. Baldwin alleged breach of contract, fraud, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duties, among other counts (the "Mississippi Federal Action").[21] In the Mississippi Federal Action, OCI also sought declaratory relief for an alleged improper dilution of OCI's equity interests and veil piercing arising from a Management Services Agreement by and between Dr. Baldwin and WPV and investments by Dr. Baldwin in New Wood and Holdco.[22] Dr. Baldwin alleged, and the Delaware Supreme Court noted, that Dr. Baldwin's basis for the Mississippi Federal Action arose from the end of his employment as President and General Manager of WPV.[23]

---

[21] *See* Opening Br. at 5-6, Ex. 1.
[22] *See id.* at 5-6; *see also Baldwin*, 283 A.3d at 1105.
[23] *See Baldwin*, 283 A.3d at 1105-06.

On May 17, 2018, the defendants in the Mississippi Federal Action moved to dismiss for lack of subject matter jurisdiction.[24] On the very same day, those same defendants filed a suit against OCI and Dr. Baldwin in the Delaware Court of Chancery, asserting claims for breach of contract, breach of fiduciary duty, and negligence (the "Delaware Plenary Action").[25] Those defendants also asserted a declaratory judgment claim in the Delaware Plenary Action and requested a declaration that OCI's allegations in the Mississippi Federal Action were false.[26]

On May 25, 2018, OCI filed a notice of dismissal without prejudice in the Mississippi Federal Action and refiled the same claims against the same defendants in the Circuit Court of Winston County, Mississippi (the "Mississippi State Action").[27] The Mississippi State Action was dismissed in February 2019 under the doctrine of *forum non conveniens*.[28]

### 2. *Advancement Action*

Before dismissal of the Mississippi State Action, Dr. Baldwin and OCI sought advancement of their litigation expenses under Section 8.3 of the LLC Agreement.[29] Section 8.3 required Dr. Baldwin and OCI to provide an "affirmation" and an

---

[24] Answering Br. at 12.
[25] *Id.*; Opening Br. at 6.
[26] *Baldwin*, 283 A.3d at 1106.
[27] Answering Br. at 12.
[28] *Id.*
[29] *See Baldwin*, 283 A.3d at 1106.

"undertaking."[30]  On August 10, 2018, Dr. Baldwin sent one letter on behalf of himself and one on behalf of OCI stating that they agreed "to repay all amounts so advanced if it shall ultimately be determined that [Dr. Baldwin and OCI are] not entitled to be indemnified in [the Delaware Plenary Action]."[31]  New Wood denied Dr. Baldwin's and OCI's requests.[32]

On January 10, 2019, Dr. Baldwin and OCI filed an advancement action in the Delaware Court of Chancery against New Wood, Holdco, and WPV (the "Advancement Action").[33]  Dr. Baldwin and OCI sought advancement for the fees incurred in the Delaware Plenary Action, and fees and interest incurred in litigating the Advancement Action (the "fees on fees").[34]

On March 25, 2019, after the Mississippi State Action was dismissed, Dr. Baldwin and OCI filed their answer and asserted counterclaims against New Wood, WPV, Holdco, Atlas, Mr. Bursky, and Mr. Liebich in the Delaware Plenary Action.[35]

Thereafter, in May 2019, Dr. Baldwin moved for partial summary judgment in the Advancement Action.[36]  The Vice Chancellor ruled that Dr. Baldwin was entitled to advancement of the litigation expenses that Dr. Baldwin incurred in

---

[30] *See* Answering Br., Ex. B § 8.3.
[31] Opening Br., Ex. 2.
[32] *See* Answering Br. at 12.
[33] *Id.*; *Baldwin*, 283 A.3d at 1106.
[34] Answering Br. at 12; *Baldwin*, 283 A.3d at 1106.
[35] Answering Br. at 13.
[36] *Baldwin*, 283 A.3d at 1107.

defending the claims in the Delaware Plenary Action, plus fees and expenses incurred in the Advancement Action, following the execution of his "undertaking" letter.[37]

The precise ruling by Court of Chancery was issued in October 2019. It ordered New Wood to pay: 75% ($269,881.61) of the advancement costs sought for Dr. Baldwin's and OCI's costs and expenses incurred in defending the Delaware Plenary Action through September 17, 2019; $17,726.97 in pre-judgment interest; and 75% ($214,459.49) of the fees on fees Dr. Baldwin and OCI incurred in bringing the Advancement Action.[38] New Wood made only a first partial payment but then objected to subsequent payments.[39] Dr. Baldwin thereafter filed a motion for fees and expenses under Court of Chancery Rule 88 (the "Rule 88 Motion").[40] In the Rule 88 Motion, Dr. Baldwin asserted that New Wood improperly claimed that it had insufficient funds to advance the amounts owed.[41] Dr. Baldwin acknowledged in the Rule 88 Motion that New Wood paid $502,068.07 of the $638,702.13, plus interest, that was requested.[42] Dr. Baldwin requested that New Wood be ordered to pay $233,373.70, plus pre- and post-judgment interest, as well as fees on fees.[43]

---

[37] *Id.*
[38] *Id.* at 1107-08.
[39] *See* Answering Br. at 14.
[40] *Baldwin*, 283 A.3d at 1108.
[41] *Id.*
[42] *Id.*
[43] *Id.*

10

Meanwhile, in January 2020, New Wood, Holdco, and WPV voluntarily dismissed their claims in the Delaware Plenary Action, leaving only Dr. Baldwin's and OCI's counterclaims remaining.[44] Later, in March 2020, New Wood moved for partial judgment on the pleadings in the Delaware Plenary Action. After considering the motion, the Court of Chancery dismissed certain of Dr. Baldwin's and OCI's counterclaims, while others remained.[45]

## E. April 2020 Written Consent

To be entitled to indemnification, Section 8.2 of the LLC Agreement requires Dr. Baldwin to act in good faith and in a manner that he reasonably believed to be in or not opposed to the best interests of New Wood.[46] New Wood sought a determination as to whether Dr. Baldwin and OCI were entitled to indemnification under Section 8.2. This Section permits such a determination to be made in one of three ways—one of which is "by holders of a Majority of then-outstanding Units (determined without regard to any Members that are parties to such Proceeding)."[47] New Wood chose this option. Specifically, at that time, ACR held approximately 85.52% of New Wood's then-outstanding Units, and Mr. Bursky was the President of ACR.[48] On April 23, 2020, Mr. Bursky executed a Written Consent of Certain

---

[44] *Id.*
[45] *Id.*
[46] *See* Answering Br., Ex. B § 8.2.
[47] *Id.*
[48] *See Baldwin*, 283 A.3d at 1109.

Members of New Wood Resources LLC (the "Written Consent").[49]  The Written

Consent stated:

> [T]he undersigned Members, constituting a Majority of the currently outstanding Units (determined without regard to Members that are party to the Lawsuits), (i) are familiar with and have had sufficient time to consider the performance, conduct and behavior of Baldwin prior to his resignation, (ii) are familiar with and have had sufficient time to consider the allegations and claims made by the parties to the Lawsuits, and (iii) have determined that Baldwin *failed to act in good faith* and in a manner that he reasonably believed to be in or not opposed to the best interest of the Company with respect to the matters at issue in the Lawsuits.[50]

The Written Consent itself sheds no additional light on ACR's determination

that Dr. Baldwin failed to act in good faith.  After execution by Mr. Bursky, New

Wood adopted the Written Consent and requested that Dr. Baldwin repay the

advanced amounts. Dr. Baldwin refused.[51]

Eventually, in August 2020, the Court of Chancery ruled on Dr. Baldwin's

Rule 88 Motion in the Advancement Action.[52]  In total, the Court of Chancery

ordered New Wood to pay Dr. Baldwin $867,211.03, which consisted of

$541,664.99 in advancement and $325,546.04 in indemnification.[53]  New Wood did

---

[49] *See* Answering Br., Ex. A.
[50] *Id.*, Ex. A at 2 (emphasis added).
[51] *Baldwin*, 283 A.3d at 1109.
[52] *Id.*
[53] *Id.* at 1110.

12

not pay until Dr. Baldwin domesticated the judgment in Mississippi.[54]  New Wood thereafter sought to claw back the money paid and initiated the current action.

## F. The Current Action

### 1. *Superior Court Proceedings*

New Wood filed the current action on October 26, 2020.[55]  New Wood's Amended Complaint alleges that Dr. Baldwin breached the LLC Agreement and the "undertaking."[56]  On January 20, 2021, Dr. Baldwin filed his Answer and a Counterclaim.  In the Answer, Dr. Baldwin asserted three affirmative defenses: (1) Section 8.2 of the LLC Agreement requires that the findings in the Written Consent be made in good faith, (2) Dr. Baldwin acted in good faith, and (3) New Wood's lag in satisfying the judgment for Dr. Baldwin in the Advancement Action caused him to incur expenses offsetting any money he owed to New Wood.[57]

Dr. Baldwin's Counterclaim seeks a declaration that: (i) New Wood must pay Dr. Baldwin the attorneys' fees and costs he incurred in domesticating the Advancement Action judgment in Mississippi, including the cost of discovery there; (ii) Section 8.2 of the LLC Agreement contains an implicit term that any determination of a right to indemnification must be made in good faith; and (iii) the

---

[54] *Id.*
[55] Complaint (D.I. 1).
[56] *See* Am. Compl. ¶¶ 21-25.
[57] Counterclaim at 13.

Written Consent was entered into in a bad faith attempt to avoid New Wood's indemnification obligations under Section 8.2.[58]

On March 16, 2021, New Wood moved for judgment on the pleadings on its breach of contract claim and Dr. Baldwin's Counterclaim.[59] This Court heard oral argument on New Wood's motion on May 12, 2021.[60] During oral argument, Dr. Baldwin asserted that his Counterclaim was both an implied covenant claim and a claim seeking to imply a term in the LLC Agreement.[61]

On August 23, 2021, this Court entered judgment in New Wood's favor.[62] This Court interpreted the LLC Agreement and undertaking to require Dr. Baldwin to repay $541,644.99, the amount advanced by New Wood.[63] Because the Written Consent stated that Dr. Baldwin acted in bad faith and was not entitled to indemnification, this Court held that Dr. Baldwin's undertaking required him to repay the money advanced to him by New Wood.[64] Only the advancement payments, not the indemnification payments, were subject to the undertaking, and thus, Dr. Baldwin was required to repay only the advancement money.[65] This Court

---

[58] *Id.* ¶ 58.
[59] *See* Plaintiff/Counterclaim Defendant's Motion for Judgment on the Pleadings (D.I. 12).
[60] *See* Judicial Action Form (D.I. 20).
[61] *Baldwin*, 283 A.3d at 1112.
[62] *See* Order (D.I. 23); *see also New Wood Res. LLC v. Baldwin*, 2021 WL 3784258 (Del. Super. Aug. 23, 2021), *rev'd and remanded*, 283 A.3d 1099 (Del. 2022).
[63] *Baldwin*, 283 A.3d at 1112-13.
[64] *Id.* at 1113.
[65] *Id.*

also determined that LLC Agreement Section 8.2 did not contain an implied covenant of good faith and fair dealing that would require New Wood to make the Written Consent's indemnification determination in good faith.[66] This Court additionally found that Dr. Baldwin did not plead a cognizable Counterclaim because the Counterclaim was asserted against New Wood rather than ACR—the entity that determined Dr. Baldwin failed to act in good faith.[67]

## 2. *Appeal to the Supreme Court*

On October 22, 2021, Dr. Baldwin appealed this Court's ruling to the Supreme Court.[68] The Supreme Court held two arguments on this matter.[69] The Supreme Court determined that Dr. Baldwin asserted his Counterclaim against the correct party, New Wood. The Supreme Court reasoned that New Wood is the real party-in-interest because New Wood is the entity obligated to indemnify persons who meet the requirements under the LLC Agreement.[70] Additionally, the Supreme Court held that Section 8.2 contains an implied covenant of good faith and fair dealing, obligating New Wood to make the indemnification determination in good faith.[71]

The Supreme Court stated:

[A]lthough Baldwin's pleadings lack specific facts as to New Wood's conduct vis-à-vis the actual Written Consent entered into on April 23,

---

[66] *See New Wood Res. LLC*, 2021 WL 3784258, at *6.
[67] *Id.* at *5.
[68] *See* Notice of Appeal to Supreme Court (D.I. 33).
[69] *Baldwin*, 283 A.3d at 1120.
[70] *Id.* at 1115-16
[71] *Id.* at 1118.

2020, he does allege bad faith on the part of New Wood throughout the overall advancement proceedings. Albeit in a disorganized fashion, Baldwin has sufficiently pleaded enough to create an issue of fact as to New Wood's good faith in discharging its obligations under Section 8.2 and to overcome New Wood's contention that it was merely presented with, and acted on, a facially valid consent obtained by ACR.[72]

The Supreme Court reversed this Court's decision and remanded it for further proceedings, noting that "[w]hether Baldwin is able to prove that New Wood breached the implied covenant of good faith and fair dealing is for another day."[73]

### 3. *Remand to Superior Court*

After remand, the parties conducted written discovery and depositions of Mr. Bursky, Mr. Liebich, Dr. Baldwin, and Dr. Baldwin's son, Richard Baldwin.[74] After the parties conducted discovery, New Wood moved for summary judgment on Dr. Baldwin's Counterclaim and New Wood's breach of contract claim.[75] The Court heard oral argument on New Wood's Motion for Summary Judgment on June 14, 2023. This memorandum opinion addresses that Motion.

### III. STANDARD OF REVIEW

The Court "will grant summary judgment if, after viewing the record in a light most favorable to the non-moving party, no genuine issues of material fact exist and

---

[72] *Id.* at 1123 (citations omitted).
[73] *Id.* at 1124.
[74] Answering Br. at 17.
[75] As discussed further below, New Wood contends this Court already found for New Wood on its breach of contract claim. The Court notes New Wood's position but will address the breach claim below.

16

the movant is entitled to judgment as a matter of law."[76]  On a motion for summary judgment, the Court: "(i) construes the record in the light most favorable to the non-moving party; (ii) detects, but does not decide, genuine issues of material fact; and (iii) denies the motion if a material fact is in dispute."[77]  The moving party bears the initial burden of showing that its motion is supported by the undisputed factual record.[78]  If the moving party meets that burden, the burden shifts to the non-moving party to show a genuine issue of material fact remains for trial.[79]

Even though the Court construes the factual record in the light most favorable to the non-moving party,[80] the Court "will not indulge in speculation and conjecture; a motion for summary judgment is decided on the record presented and not on evidence potentially possible."[81]

## IV. PARTIES' CONTENTIONS

New Wood filed its Motion for Summary Judgment on Dr. Baldwin's Counterclaim and New Wood's breach of contract claim.  First, New Wood contends

---

[76] *CVR Refin., LP v. XL Specialty Ins. Co.*, 2021 WL 5492671, at *8 (Del. Super. Nov. 23, 2021) (citing *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992)); *see also* Del. Super. Ct. Civ. R. 56.

[77] *CVR Refin., LP*, 2021 WL 5492671, at *8 (citing *Judah v. Del. Tr. Co.*, 378 A.2d 624, 632 (Del. 1997); *Merrill*, 606 A.2d at 99; *Ebersole v. Lowengrub*, 180 A.2d 467, 468-69 (Del. 1962)).

[78] *Id.* (citing *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979)).

[79] *Id.* (citing *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995)).

[80] *Id.* (citing *Judah*, 378 A.2d at 632).

[81] *In re Asbestos Litig.*, 509 A.2d 1116, 1118 (Del. Super. 1986) (citing *Rochester v. Katalan*, 320 A.2d 704, 708 n.7 (Del. 1974); *Chrysler Corp. v. New Castle Cnty.*, 464 A.2d 75, 85 (Del Super. 1983)).

that Dr. Baldwin has no basis to obtain a declaration about the Mississippi proceeding because he is already seeking this declaration in the Court of Chancery.[82] Second, New Wood maintains that Dr. Baldwin has not presented any facts to dispute that the Written Consent was executed and acted on in good faith, which defeats Dr. Baldwin's Counterclaim and, in effect, also mandates a finding for New Wood on the breach of contract claim.[83]

Dr. Baldwin takes the opposite position. Dr. Baldwin's primarily contends that New Wood is not entitled to summary judgment because the evidence does not establish New Wood's good faith, but in fact suggests New Wood acted in bad faith.[84] Dr. Baldwin argues, *inter alia*, that Mr. Bursky and Mr. Liebich failed to cite any facts upon which the Written Consent is based and instead offered only conclusory statements and irrelevant complaints about job performance and unrelated litigation.[85] Dr. Baldwin withdrew the part of his Counterclaim relating to collecting fees from domesticating the Advancement Action judgment in Mississippi, because that claim is being litigated in the Court of Chancery.[86] In short, Dr. Baldwin maintains that the evidence does not support finding that New Wood acted in good faith.

---

[82] *See* Opening Br. at 13-14.
[83] *See id.* at 15-22.
[84] *See* Answering Br. at 20.
[85] *See id.* at 29-34.
[86] *See id.* at 2 n.1.

# V. DISCUSSION

## A. The Counterclaim

Dr. Baldwin's Counterclaim states:

Dr. Baldwin is entitled to a declaratory judgment that: (i) New Wood is required to pay Dr. Baldwin the attorneys' fees and costs he incurred in domesticating the [Advancement Action judgment in] Mississippi (including the discovery efforts Dr. Baldwin was required to engage in prior to New Wood paying the [j]udgment) in an amount to be proved at trial; (ii) Section 8.2 of the LLC Agreement contains an implicit term that any determination of a right to indemnification must be made in good faith; and (iii) the Written Consent by ACR was entered into in a bad faith attempt to avoid New Wood's indemnification obligations under Section 8.2 of the LLC Agreement.[87]

Dr. Baldwin withdrew part (i) of his Counterclaim.[88] With respect to part (ii) of the Counterclaim, the Supreme Court held that Section 8.2 contains an implicit term that any indemnification determination must be made in good faith.[89] Therefore, the only remaining issue to decide with respect to the Counterclaim is whether New Wood acted on the Written Consent in bad faith.[90]

New Wood contends that there is a rebuttable presumption that all persons act in good faith, and that Dr. Baldwin has no facts to dispute that the Written Consent

---

[87] Counterclaim ¶ 58.
[88] *See* Answering Br. at 2 n.1.
[89] *See Baldwin*, 283 A.3d at 1118 ("We hold that although a good faith requirement is not expressly stated in Section 8.2, it is implicit in Section 8.2's language.").
[90] *See id.* at 1124 ("Whether Baldwin is able to prove that New Wood breached the implied covenant of good faith and fair dealing is for another day."); *see also Amirsaleh v. Bd. of Trade of City of New York, Inc.*, 2009 WL 3756700, at *5 (Del. Ch. Nov. 9, 2009) ("[T]o prove a breach of the implied covenant [Dr. Baldwin] must demonstrate that [New Wood] acted in 'bad faith.'").

was executed and acted on in good faith.[91] Dr. Baldwin counters that Mr. Bursky and Mr. Liebich failed to cite any facts upon which the Written Consent is based and instead offered only conclusory and irrelevant statements concerning job performance and unrelated litigation.[92] Dr. Baldwin misapprehends who holds the burden to demonstrate bad faith.

It is well established that Delaware law presumes a person acts in good faith.[93] So to prove a breach of the implied covenant of good faith and fair dealing, Dr. Baldwin must demonstrate that New Wood acted in bad faith.[94] And to prove bad faith, Dr. Baldwin must demonstrate that New Wood's "conduct was motivated by

---

[91] Opening Br. at 15.

[92] Answering Br. at 24.

[93] *Thomas v. King*, 99 A.2d 778, 781 (Del. 1953); *see also KE Prop. Mgmt. Inc. v. 275 Madison Mgmt. Corp.*, 1993 WL 285900, at *7 (Del. Ch. July 27, 1993) ("There is a rebuttable presumption that all persons act honestly, properly, in good faith and without fraud." (citing *Thomas*, 99 A.2d at 781)); *Amirsaleh*, 2009 WL 3756700, at *4 ("[The] Court [of Chancery] has previously held that a breach of the implied covenant of good faith and fair dealing 'implicitly indicates bad faith conduct.'" (quoting *Cont'l Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1234 (Del. Ch. 2000))).

[94] *Amirsaleh*, 2009 WL 3756700, at *5. Dr. Baldwin's counsel suggests that "bad faith" is defined as an "intentional dereliction of duty." Answering Br. at 29 (citing *Goldstein v. Denner*, 2022 WL 1671006, at *40 (Del. Ch. May 26, 2022)). The "intentional dereliction of duty" language arises in the fiduciary duty context. *See, e.g.*, *Goldstein*, 2022 WL 1671006, at *40-41 (discussing bad faith and "intentional dereliction of duty" in the breach of fiduciary duty context); *Lydonell Chem. Co. v. Ryan*, 970 A.2d 235, 240 (Del. 2009) (discussing "intentional dereliction of duty" and good faith in the breach of fiduciary duty context); *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 64 (Del. 2006) ("The precise question is whether the Chancellor's articulated standard for *bad faith corporate fiduciary conduct—intentional dereliction of duty*, a conscious disregard for one's responsibilities—is legally correct." (emphasis added)). The current action concerns the implied covenant of good faith and fair dealing, not fiduciary duties. The Court employs caselaw from implied covenant cases for its bad faith standard. It will not consider the "intentional dereliction of duty" standard.

20

a culpable mental state."[95]  The term "'bad faith' is not simply bad [judgment] or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will."[96]  Bad faith has been defined in many ways,[97] but in essence it means that New Wood's conduct "must be driven by an improper purpose."[98]  Dr. Baldwin must present evidence to "rebut the presumption" of good faith; otherwise, summary judgment for New Wood is proper.[99]

### 1.  *Neither ACR's Nor New Wood's Actions Constitute Bad Faith.*

Mr. Bursky, President of ACR, was deposed for this case.[100]  Dr. Baldwin's counsel asked Mr. Bursky how ACR came to the determination that Dr. Baldwin did not act in good faith.[101]  Mr. Bursky responded that ACR "carefully assessed the

---

[95] *Amirsaleh*, 2009 WL 3756700, at *5; *see also id.* at *5 n.24 (collecting cases discussing "bad faith" in the implied covenant context).

[96] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1208 n.16 (Del. 1993) (citing *Bad Faith*, BLACK'S LAW DICTIONARY (5th ed. 1983)); *see also Baldwin*, 283 A.3d at 1118 n.110 (citing *Desert Equities* for the same proposition).

[97] *See, e.g.*, *Amirsaleh*, 2009 WL 3756700, at *5 n.24 (collecting cases).

[98] *Id.* at *5.

[99] *KE Prop. Mgmt. Inc.*, 1993 WL 285900, at *9 (citing *Burkhart v. Davies*, 602 A.2d 56, 59 (Del. 1991)).  *KE Property Management Inc.* aptly states that an "allegation of bad faith 'raises essentially a question of fact', which means that such an allegation generally is sufficient to defeat a motion . . . for judgment on the pleadings"; but, where "the non-moving party bears the burden of persuasion at trial, as [Dr. Baldwin] does here as to overcoming the presumption of good faith, the non-moving party, after adequate opportunity for discovery, must introduce competent evidence, which, if true, would rebut the presumption or summary judgment will be granted against it."  *KE Prop. Mgmt. Inc.*, 1993 WL 285900, at *9 (citing *Desert Equities, Inc.*, 624 A.2d at 1208-09; *Burkhart*, 602 A.2d at 59).

[100] *See* Exhibit ("Bursky Tr.") (D.I. 71).

[101] *Id.* at 160:5-12, 162:9-11.

track record" of Dr. Baldwin's behavior pre- and post-exit from WPV, and ACR assessed Dr. Baldwin's claims in the multiple lawsuits between the relevant parties.[102] From that assessment, ACR determined in the Written Consent that Dr. Baldwin did not act in good faith and was not entitled to indemnification. Dr. Baldwin takes Mr. Bursky's deposition responses and claims that the Written Consent was executed in bad faith, because it was based on irrelevant facts.[103] Specifically, Dr. Baldwin emphasizes that Section 8.2 of the LLC Agreement requires that the determination of good faith (or lack thereof) must be based on facts relating to the action for which Dr. Baldwin sought indemnification.[104] Dr. Baldwin maintains that the "action" at issue for purposes of indemnification is the Delaware Plenary Action.[105]

Even assuming that Dr. Baldwin's interpretation of Section 8.2 is correct, ACR's considerations underlying the Written Consent do not amount to bad faith. Bad faith "is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will."[106] While one could argue negligence from these facts, or that ACR was just plain wrong in its

---

[102] *See id.* at 162:12-163:20. This is consistent with New Wood's supplemental interrogatory responses. *See* Opening Br., Ex. 13 at 4-7.
[103] *See* Answering Br. at 34.
[104] *See id.* at 31.
[105] *See id.* at 36.
[106] *Desert Equities, Inc.*, 624 A.2d at 1208 n.16 (citing *Bad Faith*, BLACK'S LAW DICTIONARY); *see also Baldwin*, 283 A.3d at 1118 n.110 (citing *Desert Equities* for the same proposition).

assessment, no reasonable jury could find bad faith from them. Further, no other facts exist in this record to show, for instance, that Mr. Bursky harbored any personal animus or intentionally sought to harm Dr. Baldwin, when he executed the Written Consent as President of ACR. It should be emphasized that at this stage of the proceedings discovery is complete and the record is set. The current record is the well from which the parties must dip to present evidence supporting or buttressing their respective positions. There is no evidence presented from the record to suggest that ACR executed the Written Consent with "furtive design or ill will."

There is also no evidence to support the contention that New Wood acted in bad faith when it relied on ACR's Written Consent. Mr. Liebich, former CEO of WPV and New Wood's 30(b)(6) witness, testified that ACR made the determination that Dr. Baldwin failed to act in good faith, and New Wood acted based on that determination.[107] Dr. Baldwin does not explain how New Wood's act of reliance on ACR's Written Consent constitutes bad faith under Delaware law.

Further, Dr. Baldwin's interrogatory responses do nothing to support his bad faith contention. In February 2023, Dr. Baldwin's counsel responded to New Wood's "First Set of Interrogatories and First Requests for Production of Documents."[108] Interrogatory number one asked Dr. Baldwin to identify "each and

---

[107] *See* Opening Br., Ex. 16 at 100:24-101:7.
[108] *See id.*, Ex. 7.

every factual basis" for the contention that the Written Consent was not executed in good faith.[109] Dr. Baldwin responded in pertinent part:

> By way of further answer, on August 10, 2020 the Court of Chancery held a final hearing on the issue of Dr. Baldwin's right to indemnification . . . , and on August 26, 2020 the Court issued its final Order . . . , which in combination with its prior Order awarded Dr. Baldwin the combined sum of $867,211.03. During the entirety of these proceedings, and including during the oral argument on August 10, [New Wood] never disclosed to the Court of Chancery its purported "resolution" of April 23, 2020 [*i.e.*, the Written Consent] that Dr. Baldwin had been acting in "bad faith" and was never entitled to indemnification or advancement at all. Moreover, [New Wood] raised the argument in this Court that its resolution was never subject to any "good faith" standard, an argument that the Delaware Supreme Court squarely rejected in its written opinion of August 16, 2022.[110]

The contents of the above answer do not rise to a showing of bad faith by ACR or New Wood. New Wood's tactical decision to not raise the Written Consent as an argument in the Court of Chancery does not constitute bad faith. The same is true for New Wood's position during argument in this Court or the Supreme Court. Bad faith requires "conduct [] motivated by a culpable mental state" that is "driven by an improper purpose."[111] These tactical decisions do not establish the "conscious doing of a wrong because of dishonest purpose or moral obliquity."[112] Instead, these

---

[109] *Id.*, Ex. 7 at 3.
[110] *Id.*, Ex. 7 at 4.
[111] *Amirsaleh*, 2009 WL 3756700, at *5 (citation omitted).
[112] *Desert Equities, Inc.*, 624 A.2d at 1208 n.16 (citing *Bad Faith*, Black's Law Dictionary).

24

are merely tactical and strategic decisions. A reasonable jury could not find that these tactical decisions constitute "bad faith."[113]

The discovery record further cuts against Dr. Baldwin's position. New Wood's counsel asked Dr. Baldwin, during a deposition, if Dr. Baldwin had any basis "to assert that Mr. Bursky didn't execute" the Written Consent "in good faith."[114] Dr. Baldwin responded that he "ha[d] no idea what Mr. Bursky did" and that Dr. Baldwin had "no basis to answer that question."[115]

While Dr. Baldwin has presented multiple conclusory arguments that ACR and New Wood acted in bad faith, Dr. Baldwin has presented no *evidence* of bad faith by ACR or New Wood with respect to executing and acting on the Written Consent. Absent that anchoring evidence of bad faith related to the Written Consent, Dr. Baldwin's claim cannot withstand summary judgment.

**2. *Even If ACR's Actions Could Be Viewed as Bad Faith, There Is No Evidence of Bad Faith by New Wood.***

Even assuming *arguendo* that ACR's actions rose to the level of bad faith, there is *no* evidence that New Wood colluded with, or had any knowledge of, ACR's actions. In other words, there is no evidence that New Wood had any knowledge

---

[113] *See Gap 41 Ventures, L.L.C. v. Snehyasmeena Corp.*, 2020 WL 95857, at *1 (Del. Super. Jan. 8, 2020) ("Summary judgment is only appropriate if [the claim] lack[s] evidentiary support such that no reasonable jury could find in its favor." (citing *Hecksher v. Fairwinds Baptist Church, Inc.*, 115 A.3d 1187, 1200-05 (Del. 2015); *Edmisten v. Greyhound Lines, Inc.*, 2012 WL 3264925, at *2 (Del. Aug. 13, 2012))).
[114] Opening Br., Ex. 8 at 73:20-23.
[115] *Id.*, Ex. 8 at 74:3-4, 74:11-12.

leading New Wood to doubt ACR's determination that Dr. Baldwin failed to act in good faith. For instance, Mr. Liebich, New Wood's 30(b)(6) witness, stated at his deposition: "The determination that [Dr. Baldwin] acted in bad faith was made by our majority member, ACR."[116] Mr. Liebich further stated that "[t]he finding of bad faith was made by, as I said earlier, ACR. . . . [T]he [de]termination [sic] of bad faith pursuant to Section 8.2 in the LLC [A]greement was made by ACR. That's where that determination was made."[117] Even further, in answering questions about ACR's assessment, Mr. Liebich stated that "I'm not a party to ACR, nor was I involved in the conversations with ACR."[118] Mr. Liebich's testimony remains unrebutted, and no evidence exists to show that New Wood was aware of ACR's decision-making process. Moreover, no evidence exists to show that New Wood had any reason to doubt ACR's determination in the Written Consent.

Dr. Baldwin must present evidence of *New Wood's* bad faith for his implied covenant claim to survive summary judgment.[119] Dr. Baldwin asserted his

---

[116] *Id.*, Ex. 16 at 100:24-25.
[117] *Id.*, Ex. 16 at 105:12-18.
[118] *Id.*, Ex. 16 at 105:21-22. While Mr. Liebich stated that he "believe[d] [Dr. Baldwin] has acted in bad faith," that does not mean that New Wood knew what ACR did. *See id.*, Ex. 16 at 101:15.
[119] *See Amirsaleh*, 2009 WL 3756700, at *5 ("[T]o prove a breach of the implied covenant [counterclaim] plaintiff must demonstrate that [counterclaim] defendant[] acted in 'bad faith'".); *see also KE Prop. Mgmt. Inc.*, 1993 WL 285900, at *9 (noting on summary judgment that party asserting bad faith must overcome the presumption of good faith and "must introduce competent evidence which, if true, would rebut the presumption or summary judgment will be granted against it" (citation omitted)).

Counterclaim against New Wood, not ACR.[120]  Further, Dr. Baldwin's implied

covenant claim is premised on the LLC Agreement, to which New Wood is a party,

not ACR.[121]  Dr. Baldwin executed the undertaking pursuant to the LLC

Agreement.[122]  And, in the words of the Supreme Court, "[a]lthough [Dr.] Baldwin

has alleged bad faith on the part of ACR, ACR is not a party."[123]

Even assuming there is evidence of ACR's bad faith, which ultimately the

Court does not find, that is not enough.  Dr. Baldwin must present evidence of New

Wood's bad faith.  Dr. Baldwin has not done so.[124]

3. ***The Court Is Not Permitted to Independently Determine Whether Dr. Baldwin Acted in Good Faith.***

It is important to note that the Court cannot make an independent

determination regarding whether Dr. Baldwin acted in good faith.  The LLC

Agreement does not permit it.  Delaware law does not permit it.

Section 8.2 of the LLC Agreement governs the good faith determination

procedure which states in pertinent part:

> [N]o Person shall be entitled to indemnification hereunder unless it is found (in the manner described below in this Section 8.2) that, with respect to the matter for which such Person seeks indemnification, such Person acted in good faith and in a manner that he or she reasonably believed to be in or not opposed to the best interest of the Company[.]

---

[120] *See* Counterclaim.
[121] *See* Answering Br., Ex. B at preamble.
[122] *See* Opening Br., Ex. 2.
[123] *Baldwin*, 283 A.3d at 1121.
[124] Additionally, the LLC Agreement does not contain a provision permitting New Wood to reassess ACR's determination in the Written Consent.

27

. . . The finding of the standard of conduct required above shall be made (a) by a majority vote of all of the Managers who are not parties to such Proceeding even though less than a quorum or (b) if there are no such Managers, or if such Managers so direct, by independent legal counsel in a written opinion or (c) by holders of a Majority of the then-outstanding Units (determined without regard to any Members that are parties to such Proceeding).[125]

Recently, in a related action, the Court of Chancery examined Section 8.2 and noted that its "language is similar to [Delaware General Corporation Law] Section 145(d), with one crucial difference: it specifically omits Section 145(d)'s reference to 'unless ordered by a court.'"[126] DGCL Section 145(d) relates to indemnification and states that determinations on indemnification shall be made in one of four enumerated ways, "unless ordered by a court."[127] The Vice Chancellor expounded on the above, stating:

> Section 8.2's applicable standard-of-conduct condition decision-making process roughly mirrors [DGCL] Section 145(d), with one quite notable exception. The drafters of Section 8.2 omitted the key phrase . . . "unless otherwise ordered by a court . . . ." Applying the plain terms of Section 8.2, then, it is clear to me that [Dr. Baldwin's and OCI's] request for indemnification via a fees-on-fees award [in the Court of Chancery] would be improper at this time since Section 8.2 identifies the decision-makers for entitlement to indemnification and, in this posture, I [i.e., a court] am not among them. Unlike [DGCL] Section 145(d), the contracted-for language of Section 8.2 quite specifically

---

[125] Answering Br., Ex. B. § 8.2.
[126] *See* Supplemental Authority, Ex. A at 7:16-19 (D.I. 73) [hereinafter Chancery Ruling]. For context, this quote is from a transcript of a telephonic bench ruling by Vice Chancellor Cook in a related action, captioned as: *Richard F. Baldwin and Oak Creek Investments, LLC, v. New Wood Resources LLC, Winston Plywood & Veneer LLC, and WPV Holdco LLC*, C.A. No: 2022-1059-NAC. The bench ruling occurred on June 12, 2023, and the Vice Chancellor ruled that Dr. Baldwin was not entitled to advancement in this action in Superior Court. *See id.* at 3:20-4:6.
[127] *See* 8 *Del. C.* § 145(d) (2023).

28

does not include the "unless otherwise ordered by the court" language. In considering this, then, I cannot ignore the Written Consent and the conditions that generated the [W]ritten [C]onsent.[128]

"Delaware 'is a freedom of contract state, with a policy of enforcing the voluntary agreements of sophisticated parties in commerce.'"[129] Other sections of the LLC Agreement contemplate judicial determinations.[130] If the Court injected itself into Section 8.2's good faith determination, the Court would nullify the explicit language of other LLC Agreement sections. Doing so would disregard long established Delaware precedent requiring the Court to "construe the agreement as a whole, giving effect to all provisions therein."[131] If the parties intended that the good faith determination be made by a court, they could have written it into the LLC Agreement.[132] The fact that Section 8.2 roughly mirrors DGCL Section 145(d),

---

[128] Chancery Ruling at 23:10-24:2.

[129] *Terrell v. Kiromic Biopharma, Inc.*, -- A.3d --, 2023 WL 3237142, at *7 (Del. May 4, 2023) (quoting *Pers. Decisions, Inc. v. Bus. Planning Sys., Inc.*, 2008 WL 1932404, at *6 (Del. Ch. May 5, 2008), *aff'd*, 970 A.2d 256 (Del. 2009)).

[130] *See, e.g.*, Answering Br., Ex. B. §§ 8.1 (employing the language "as determined by a final, nonappealable order of a court of competent jurisdiction" in the "Exculpation" provision), 12.1(c) (employing the language "entry of a decree of judicial dissolution of the Company" in the "Dissolution" provision).

[131] *See, e.g.*, *E.I. du Pont de Nemours & Co., Inc. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985) (citation omitted); *see also Sonitrol Hldg. Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del. 1992) ("Under general principles of contract law, a contract should be interpreted in such a way as to not render any of its provisions illusory or meaningless." (citation omitted)); *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396-97 (Del. 2010) ("We will read a contract as whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage." (citation omitted)).

[132] *See Sarraf 2018 Fam. Tr. v. RP Holdco, LLC*, 2022 WL 10093538, at *9 (Del. Super. Oct. 17, 2022) (noting that in an unambiguous contract, when a party sought relief that was not in the language of the contract, the Court would not write it in post hoc, and further noting that if "the parties intended such a result, they could have written it into the" contract).

except that Section 8.2 excludes the language "unless ordered by a court," suggests that the parties contemplated judicial review and decided against it. Thus, it would be a stark deviation from this jurisdiction's adherence to freedom of contract principles if the Court were to override the clear terms of the LLC Agreement and exercise judicial review of Dr. Baldwin's actions.[133]

Separately, although not raised by any of the parties in their briefing, the Court finds it pertinent to address a recent Supreme Court decision—*Terrell v. Kiromic Biopharma, Inc.*[134] In *Terrell*, a former director sought declaratory and injunctive relief against a corporation regarding the meaning of a stock option agreement and an option grant notice.[135] Dr. Terrell was compensated for his work at Kiromic Biopharma, Inc. through three stock-option grants.[136] The third option grant notice contained provisions that Kiromic interpreted to mean that the two previous grants were supplanted by the third.[137] Dr. Terrell disagreed.[138] The stock option agreement vested a "committee," made up of at least one Kiromic director, with the authority to interpret the stock option agreement.[139] The committee determined that

[133] *Terrell*, -- A.3d --, 2023 WL 3237142, at *7 ("Delaware 'is a freedom of contract state, with a policy of enforcing the voluntary agreements of sophisticated parties in commerce.'" (quoting *Pers. Decisions, Inc.*, 2008 WL 1932404, at *6)).

[134] -- A.3d --, 2023 WL 3237142 (Del. May 4, 2023).

[135] *Id.* at *1.

[136] *Id.*

[137] *Id.* at *2.

[138] *Id.*

[139] *Id.* at *2, *4.

its authority to interpret the stock option agreement extended to interpreting the option grant notices.[140] The committee concluded that the third option grant notice superseded and nullified the previous two grants, but offered no basis for its reasoning.[141] The Court of Chancery deferred to the committee's determination and dismissed Dr. Terrell's claim on the basis that it lacked subject matter jurisdiction.[142]

Dr. Terrell appealed the Court of Chancery's ruling and argued that it erred by failing to review the committee's determination before dismissing his claim.[143] The Supreme Court held that the Court of Chancery erred by failing to review the committee's determination.[144] The Supreme Court found that even though the Court of Chancery determined that the stock option agreement's interpretation provision was not an arbitration provision, but more like an expert determination,[145] that expert determination was reached by relying on contract interpretation principles, and, ultimately, resulted in a legal determination by the committee.[146]

Hence, the Supreme Court held that review of the expert determination, which was based on legal conclusions reached by the committee, required a *de novo* review

---

[140] *Id.* at *3.
[141] *Id.*
[142] *See id.* at *4.
[143] *Id.*
[144] *Id.* at *9 ("Because [the interpretation provision] is an expert determination, not an arbitration [provision], and because it requires the Committee to reach legal determinations, not issue findings of fact within its area of expertise, the Court of Chancery is not required to defer to the Committee's conclusions.").
[145] *See id.* at *5-6.
[146] *Id.* at *6-7.

of the interpretation of the relevant agreements.[147]  Simply put, *Terrell* states that a court must review a committee's (or some other similar decision-maker's) contract-interpretation-based legal conclusions *de novo* if the appropriate circumstances arise.

Those circumstances are not present here.  This action between Dr. Baldwin and New Wood is distinct from *Terrell*.  In this case, the LLC Agreement vested ACR, as a holder of a majority of then-outstanding units, with the authority to determine whether Dr. Baldwin acted in good faith and, thus whether Dr. Baldwin was entitled to indemnification.  Importantly, "Good faith" is defined in the LLC Agreement:

> [N]o Person shall be entitled to indemnification hereunder unless it is found (in the manner described below in this <u>Section 8.2</u>) that, with respect to the matter for which such Person seeks indemnification, such Person *acted in good faith and in a manner that he or she reasonably believed to be in or not opposed to the best interests of the Company*.[148]

Thus, ACR did not make a legal interpretation of the LLC Agreement, nor did it reach a legal conclusion, because good faith is defined in the LLC Agreement. Further, ACR did not make an expert determination.  Instead, it made a factual determination based on a contractually defined standard and found only that Dr. Baldwin's actions were not in the best interests of New Wood.  Therefore, the basis for judicial review, set out in *Terrell,* does not apply here.

---

[147] *Id.* at *9.
[148] Answering Br., Ex. B § 8.2 (underlining in original) (italics added).

This Court reviewed whether ACR and New Wood acted in bad faith by executing and acting on the Written Consent. The Court has determined that New Wood did not engage in a concerted course of bad faith with ACR. *Terrell* does not sanction judicial override of the LLC Agreement to engage in *de novo* review of ACR's determination that Dr. Baldwin acted in bad faith. Hence, the "parties are stuck with what they bargained for."[149]

With discovery complete, there is no evidence in the record for a reasonable trier of fact to conclude that New Wood acted in bad faith. Dr. Baldwin cannot rebut the presumption that New Wood acted in good faith. As a result, New Wood's Motion for Summary Judgment on the Counterclaim is **GRANTED**.

## B. The Breach of Contract Claim

This Court originally granted New Wood's 12(c) motion on its breach of contract claim against Dr. Baldwin and against Dr. Baldwin on his Counterclaim.[150] On appeal, the Supreme Court addressed "the narrow issue of whether the LLC Agreement contains an implied covenant of good faith that would require this determination of a Person's entitlement to indemnification to be made in good faith."[151] The Supreme Court held that there is an implied covenant, so it reversed

---

[149] *See Senior Hous. Cap., LLC v. SHP Senior Hous. Fund, LLC*, 2013 WL 1955012, at *3 (Del. Ch. May 13, 2013); *see also Terrell*, 2023 WL 3237142, at *8 (quoting *Senior Hous. Cap., LLC*, 2013 WL 1955012, at *3).
[150] *See New Wood Res.*, 2021 WL 3784258, at *1.
[151] *Baldwin*, 283 A.3d at 1102.

and remanded the case back to this Court. Notably, the Supreme Court did not address New Wood's breach of contract claim. New Wood contends this Court's prior ruling on the breach of contract claim stands and is not at issue now.[152] Based on the procedural history of this case, the Court tends to agree.[153] Nonetheless, the Court briefly addresses New Wood's breach of contract claim.

The elements of a breach of contract claim are: "(1) the existence of a contractual obligation; (2) a breach of that obligation; and (3) damages resulting from the breach."[154]

Here, the LLC Agreement and Dr. Baldwin's undertaking created a valid contract between New Wood and Dr. Baldwin.[155] New Wood provided Dr. Baldwin $541,664.99 in advancement.[156] ACR, and in effect New Wood, later determined that Dr. Baldwin was not entitled to that money via the Written Consent,[157] and Dr. Baldwin did not repay that money to New Wood when New Wood requested it.[158] Dr. Baldwin therefore breached his contractual obligation to repay New Wood. New

---

[152] *See* Plaintiff/Counterclaim Defendant's Reply Brief ("Reply Br.") at 9 n.12 (D.I. 72).

[153] The breach of contract claim was not an issue raised by the parties in their respective briefs to the Supreme Court. *See Richard Baldwin v. New Wood Resources LLC*, No. 303,2021 (D.I. 15, D.I. 19, D.I. 20).

[154] *Buck v. Viking Hldg. Mgmt. Co. LLC*, 2021 WL 673459, at *3 (Del. Super. Feb. 22, 2021) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).

[155] *See Baldwin*, 283 A.3d at 1104 ("Section 8.3 conditions [Dr. Baldwin's] receipt of advancement on: (1) delivery of the written affirmation by [Dr. Baldwin] . . . , and (2) execution of a written undertaking to repay all advanced amounts if it is ultimately determined that [Dr. Baldwin] is not entitled to indemnification.").

[156] *See id.* at 1110.

[157] *See* Answering Br., Ex. A; *Baldwin*, 283 A.3d at 1109.

[158] *Baldwin*, 283 A.3d at 1109.

34

Wood suffered damages from the breach in the amount of $541,664.99 that New Wood advanced to Dr. Baldwin.

Based on this Court's ruling on the Counterclaim, Dr. Baldwin has no valid remaining defenses to his breach. To be sure, Dr. Baldwin's second affirmative defense to New Wood's breach claim is that "New Wood's claims are barred because at all relevant times hereto Dr. Baldwin acted in good faith and in a manner that he reasonably believed to be in or not opposed to the best interest of New Wood."[159] As explained above, the LLC Agreement contains no provision for this Court to decide whether Dr. Baldwin acted in good faith. Instead, that decision is to be made by (1) a manager vote, (2) a written opinion by independent legal counsel, or (3) a member vote.[160] Because that decision was made pursuant to a valid member vote, Dr. Baldwin has no viable affirmative defense. And, as determined above, Dr. Baldwin's Counterclaim fails, and he has no claim to counter his breach.

Therefore, New Wood's Motion for Summary Judgment on the breach of contract claim is **GRANTED**.

---

[159] Counterclaim at 13. Dr. Baldwin's two other affirmative defenses are inapplicable because one is covered by his Counterclaim, and the other is based on offset for domesticating the Advancement Action judgment in Mississippi. *See id.*
[160] *See* Answering Br., Ex. B § 8.2.

## VI. CONCLUSION

Summary Judgment on New Wood's Breach of Contract claim and on the Counterclaim is **GRANTED**. Dr. Baldwin shall repay the $541,664.99 advanced to him, together with applicable prejudgment interest. Counsel for New Wood shall submit a proposed order to this effect by August 11, 2023.

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge